UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEVIN PAUL BLAKESLEY,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No. C14-137-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

　　　Devin Paul Blakesley seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  He contends the ALJ erred by finding his mental impairments did not meet or equal a listing and by failing to consider the effects of all of his impairments when evaluating his residual functional capacity.  Dkt. 14.  As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for an award of benefits for the closed period from April 9, 2010, to February 1, 2012.

## BACKGROUND

　　　Mr. Blakesley is currently 39 years old, has a high school education, and has worked as a security guard and print shop helper.  Tr. 65-66, 231, 275.  On February 22, 2011, he applied for benefits, alleging disability as of April 9, 2010.  Tr. 231, 233.  After his applications were denied initially and on reconsideration, the ALJ conducted a hearing and, on August 30, 2012, issued a

REPORT AND RECOMMENDATION - 1

decision finding Mr. Blakesley not disabled.  Tr. 19-32.  As the Appeals Council denied Mr. Blakesley's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1.

### THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that Mr. Blakesley had engaged in substantial gainful activity from February 1, 2012, to the date of the decision, but had not engaged in substantial gainful activity from the alleged onset date to February 1, 2012.  Tr. 21-22.  The ALJ's remaining findings addressed the period Mr. Blakesley did not engage in substantial gainful activity.  Tr. 22.  The ALJ found that Mr. Blakesley had the following severe impairments: degenerative disc disease of the lumbar spine, attention deficit disorder, affective disorder, anxiety-related disorder, and personality disorder; and that these impairments did not meet or equal a listed impairment.[2]  Tr. 22-25.  The ALJ found that Mr. Blakesley had the residual functional capacity to perform light work except he should avoid concentrated exposure to extreme cold and to hazards; he had the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: he could understand, remember, and carry out simple instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work; he could make simple judgments and work-related decisions required of unskilled jobs, respond appropriately to supervision and co-workers, and deal with changes all within a stable work environment; he could not deal with the general public as in a sales/cashier position or where the general public is frequently encountered as an essential element of the work process such as telemarketing; incidental contact with the general public is not precluded so long as the public is not a part of the work process.  Tr. 26.  The ALJ found that Mr. Blakesley was unable to perform any past relevant work, but he could perform other work that exists in

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

significant numbers in the national economy. Tr. 30-31. The ALJ therefore concluded that Mr. Blakesley was not disabled. Tr. 32.

## DISCUSSION

### A. The ALJ's evaluation of the medical opinions

Mr. Blakesley argues that the ALJ erred by rejecting medical opinions from treating and examining sources to find at step three that Mr. Blakesley's mental impairments did not meet or equal a listing for the closed period at issue here. Dkt. 14 at 3. He further argues, in the alternative, that because the ALJ erroneously rejected the treating and examining doctors' opinions, the ALJ erred in evaluating his residual functional capacity and in finding him not disabled at step five. Dkt. 14 at 18-19.

The ALJ must follow a special technique for evaluating mental impairments. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ must first evaluate a claimant's pertinent signs, symptoms, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b), 416.920a(b). If the ALJ finds that the claimant has a medically determinable mental impairment, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment. *Id.* The ALJ must then rate the degree of functional limitation resulting from the impairment in four broad areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the degree of functional limitation in the first three areas is "none" or "mild" and it is "none" in the fourth area, the impairment is generally not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Otherwise, the impairment is severe, and the ALJ must consider whether it meets or equals a listed impairment at step three. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).

REPORT AND RECOMMENDATION - 3

An impairment or combination of impairments meets or equals the listings at issue here if the claimant has marked restriction in at least two of the first three functional areas or marked restriction in at least one of the first three functional areas along with repeated episodes of decompensation, each of extended duration.  20 C.F.R. Part 404, Subpart P, App. 1, §§ 12.02, 12.04, 12.06, 12.08.  If the impairment neither meets nor equals the severity of a listing, the ALJ must then assess the claimant's residual functional capacity.  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

The ALJ relied on the opinions of Kevin Zvilna, Ph.D., Bridget Cantrell, Ph.D., and Daniel Kodner, M.D., to find at step two that Mr. Blakesley had medically determinable severe mental impairments.  Tr. 23-24.  The ALJ relied primarily on Mr. Blakesley's self reports, with a brief reference to Dr. Kodner's evaluation and a medical center treatment report, in evaluating Mr. Blakesley's functional limitations in the four areas at step three.  Tr. 25-26.  The ALJ found that Mr. Blakesley had mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation that have been of extended duration.  Tr. 25-26.  The ALJ therefore concluded at step three that Mr. Blakesley did not have a mental impairment that met or equaled the listings for the relevant period.  *Id.*  The ALJ then proceeded to assess Mr. Blakesley's residual functional capacity.  Tr. 26.  The ALJ gave little weight to Dr. Zvilna's, Dr. Cantrell's, and Dr. Kodner's opinions in making this assessment, instead giving significant weight to the state agency psychological consultant's opinion.  Tr. 28-30.

Mr. Blakesley argues that the ALJ erred by rejecting the opinions of Dr. Zvilna, Dr. Cantrell, and Dr. Kodner, who opined that his impairments were severe enough to meet or equal a listing, in favor of the opinion of the non-examining doctor.  Dkt. 14 at 6.  In general, the ALJ

REPORT AND RECOMMENDATION - 4

should give more weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where it is not contradicted by another doctor, the ALJ may reject a treating or examining doctor's opinion only for "clear and convincing reasons." *Id.* at 830-31.  Where contradicted, the ALJ may not reject a treating or examining doctor's opinion without "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating hhiser interpretation of the facts and evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

      *1.       Dr. Zvilna*

Dr. Zvilna examined Mr. Blakesley in January 2011.  He diagnosed major depressive disorder, PTSD, and psychotic disorder NOS, with rule out diagnoses of schizophrenia and ADHD.  He also noted "head twitching" and disc issues among Mr. Blakesley's medical problems.  He assigned a global assessment of functioning (GAF) score of 38 with the highest in the past year of 40, indicating some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. text rev. 1994).  Dr. Zvilna noted neologisms and delusional thoughts, marked disorientation, and marked shallow affect.  He assessed severe limitations in performing complex

REPORT AND RECOMMENDATION - 5

tasks, marked limitations in performing routine tasks without undue supervision, and mild to moderate limitations in other functional areas.  Tr. 411-15.

In April 2012, Dr. Zvilna completed interrogatories in which he opined that Mr. Blakesley had an anxiety disorder and PTSD that resulted in marked impairment in the first three functional areas and repeated episodes of decompensation; a psychotic disorder characterized by delusions and illogical thinking that resulted in marked difficulties in maintaining social functioning and often episodes of decompensation; and ADHD characterized by marked inattention and marked hyperactivity that resulted in marked impairment in age-appropriate social functioning and marked deficiencies in concentration, persistence, and pace.  Tr. 417-24.

At step two, the ALJ gave no weight to Dr. Zvilna's diagnosis of psychotic disorder NOS, as there was no documentation of that condition other than Dr. Zvilna's report.  Tr. 23.  In evaluating Mr. Blakesley's residual functional capacity, the ALJ gave little weight to Dr. Zvilna's January 2011 opinion, finding that Mr. Blakesley's presentation with neologisms, delusional thought, and head twitching were inconsistent with his presentation to other treating and examining sources.  Tr. 29.  And the ALJ gave little weight to the April 2012 assessment, finding that it was based on a one-time evaluation conducted in January 2011, and that Mr. Blakesley's presentation at the evaluation was inconsistent with the longitudinal record.  Tr. 30.

Mr. Blakesley argues that the ALJ improperly focused on Dr. Zvilna's reports of head twitching because Dr. Zvilna "never stated that he based any of his assessment of Plaintiff's psychological problems or functional limitations on this alleged symptom."  Dkt. 14 at 8.  While this may be true, the ALJ focused not on how Dr. Zvilna interpreted the symptom, but on the inconsistency between the symptoms Dr. Zvilna recorded and Mr. Blakesley's presentation to other sources.  An ALJ may give less weight to an opinion that is inconsistent with other

evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). There are no other reports of head twitching in the record. The ALJ did not err by considering this inconsistency.

Mr. Blakesley argues that his presentation to Dr. Zvilna was not "completely" contrary to his presentation to other providers, pointing to other notes of hallucinations and periods of disassociation. Dkt. 14 at 9-10. But the fact that portions of Dr. Zvilna's report were consistent with other evidence does not invalidate the ALJ's finding that other parts were not. It is the ALJ who resolves conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Even if some parts of Dr. Zvilna's report were consistent with other evidence, the Court may not reweigh the evidence. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Dr. Zvilna's report need not be "completely" contradicted for the ALJ to find it inconsistent with other evidence.

Mr. Blakesley argues that Dr. Zvilna relied on the presence of neologisms only for his diagnosis of a psychotic disorder—a diagnosis which the ALJ rejected at step two. Dkt. 14 at 10. But the fact that the ALJ rejected a diagnosis based at least in part on this symptom does not negate the fact that Dr. Zvilna's report of this symptom is unsupported by any other evidence in the record. The ALJ's rejection of Dr. Zvilna's diagnosis of a psychotic disorder does not require him to ignore the evidence Dr. Zvilna relied on to make the diagnosis.

Mr. Blakesley argues that Dr. Zvilna's assessment is consistent with Dr. Kodner's evaluation and conclusions regarding PTSD. Dkt. 14 at 10-11. Again, it is for the ALJ, not this Court, to weigh the evidence. The fact that parts of Dr. Zvilna's opinion may be consistent with other evidence does not negate the inconsistencies the ALJ relied on in weighing the opinion.

Mr. Blakesley argues that the mere fact that Dr. Zvilna's April 2012 opinion was based

REPORT AND RECOMMENDATION - 7

on a one-time assessment does not constitute a legitimate reason to disregard the opinion. Dkt. 14 at 11. First, he bases this argument on the assumption that the ALJ's reliance on the inconsistencies between Dr. Zvilna's opinions and the rest of the record was invalid. But the inconsistencies discussed above undermine Dr. Zvilna's later opinion as much as they do his first. Second, Dr. Zvilna completed the interrogatories well over a year after he evaluated Mr. Blakesley. The ALJ did not err by considering the passage of time between the examination and the opinion.

The ALJ provided specific and legitimate reasons to give little weight to Dr. Zvilna's opinions and did not err by failing to find Mr. Blakesley met a listing based on these opinions.

*2.     Dr. Cantrell*

Dr. Cantrell treated Mr. Blakesley from February 2011 through at least July 2011. In May 2011 she completed a psychological evaluation. Tr. 360-67. She diagnosed chronic PTSD, major depressive episodes recurrent, and generalized anxiety disorder, and assigned a GAF score of 40. She opined that Mr. Blakesley "has a desire to work full-time, however based on his level of functioning and his employment history there appears to be some conflict about the reality of full-time employment and his actual capabilities." Tr. 366. She further opined:

> [I]t is my professional opinion that he is greatly limited in his ability to seek, maintain or sustain gainful employment now or in the future. However, he desires to be trained for some kind of work that would accommodate his limitations. He realizes that this training must pertain to actual hands on, due to his limited ability to read and recall information pertinent to employment. He cannot follow commands either verbal or generalized written, unless it is routine without deviation.

Tr. 367.

In May 2012, Dr. Cantrell completed interrogatories in which she opined that Mr. Blakesley had PTSD, a depressive syndrome, an anxiety-related disorder, an organic mental

REPORT AND RECOMMENDATION - 8

disorder, and a personality disorder, and that these impairments resulted in marked to extreme deficiencies in activities of daily living, social functioning, and concentration, persistence, or pace, and repeated to constant episodes of decompensation.  Tr. 435-47.

The ALJ gave little weight to Dr. Cantrell's February 2011 opinion.  Tr. 29.  The ALJ found that the opinion was internally inconsistent, pointing to Dr. Cantrell's opinion that Mr. Blakesley was greatly limited in his ability to seek, maintain, or sustain employment, but also her notation that he desired vocational training.  *Id.*  However, Mr. Blakesley's desire to work is not inconsistent with his doctor's opinion that he is limited in his ability to work.  This was not a legitimate reason to discount her opinion.

The ALJ found that Dr. Cantrell based her opinion in part on Mr. Blakesley's physical pain, but the ALJ found his allegations of chronic pain not credible.  Tr. 29.  An ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  But Mr. Blakesley's reports of physical pain were just one of the factors that formed the basis of Dr. Cantrell's opinion.  *See* Tr. 367 ("therefore as a result of all of these factors . . .").  Moreover, an ALJ does not provide adequate reasons for rejecting a treating doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports her ultimate opinion with her own observations.  *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).  Dr. Cantrell's consideration of Mr. Blakesley's reports of physical pain as one factor among several, and supported by her own observations, was not a legitimate reason to disregard her opinion.

The ALJ found that Mr. Blakesley's participation in medieval reenactments indicated that he was not as impaired as Dr. Cantrell opined.  Tr. 29.  Dr. Cantrell discussed the reenactments

REPORT AND RECOMMENDATION - 9

as follows: "He does his best to overcompensate for his deficits by doing reenactments, which pertain to medieval period of time. He wears period clothing and takes on this demeanor and perhaps this is a way to hide his insecurities and take on another role to be someone he aspires to be." Tr. 367. Dr. Cantrell provided an interpretation of Mr. Blakesley's reenactment participation that supported her opinions. The ALJ failed to explain why his interpretation, rather than Dr. Cantrell's, was correct. *Orn*, 495 F.3d at 632. And there is no indication that he participates in medieval reenactments in a manner that is consistent with the ability to work or to follow either verbal or written commands. This was not a legitimate reason to reject the opinion.

The ALJ found that Mr. Blakesley's subsequent work activity also pointed to a lesser degree of impairment that Dr. Cantrell opined. Tr. 29. This evidence undermines Dr. Cantrell's opinion that Mr. Blakesley would be limited in his ability to seek work. However, in a letter dated 5 days after the date of the ALJ decision, Mr. Blakesley submitted evidence showing that he had been terminated from his job on September 3, 2012.[3] Tr. 329-30. His work activity therefore lasted for a period of seven months. This later evidence supports Dr. Cantrell's opinion that Mr. Blakesley would be unable to maintain or sustain gainful employment and undermines the ALJ's reason for rejecting her opinion. The Court concludes that the ALJ's finding does not remain supported by substantial evidence in light of the later evidence. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

Because the ALJ did not provide specific and legitimate reasons, supported by substantial evidence, for giving little weight to Dr. Cantrell's May 2011 opinion, the ALJ erred by rejecting it.

---

[3] Because the Appeals Council considered the evidence in denying review of this case, Tr. 4, the new evidence is part of the administrative record, which this Court must consider in determining whether the ALJ's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

REPORT AND RECOMMENDATION - 10

The ALJ also gave little weight to Dr. Cantrell's May 2012 interrogatory opinions. Tr. 30. The ALJ found that the longitudinal record did not document the extreme limitations she assessed, noting that at the time Dr. Cantrell completed the opinion, Mr. Blakesley was far from experiencing constant episodes of decompensation or deterioration and was in fact working at substantial gainful activity levels. *Id.* As the ALJ noted, Mr. Blakesley was working at substantial gainful activity levels at the time Dr. Cantrell opined that he was experiencing extreme functional limitations and constant episodes of decompensation. Even considering the fact that Mr. Blakesley subsequently was fired from this job, the inconsistency between his ability to perform any work at all and the extreme limitations Dr. Cantrell opined undermine her opinion. This contradiction supports the ALJ's decision to reject these opinions. *Batson*, 359 F.3d at 1195.

The ALJ found that Dr. Cantrell's own notes do not support the degree of limitation she assessed. Tr. 30. A discrepancy between a doctor's statement assessing a patient's limitations and the doctor's clinical notes, recorded observations, and other opinions is a clear and convincing reason for not relying on the doctor's statement. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ noted that Mr. Blakesley reported to Dr. Cantrell in February 2011 that he had made some new friends, which was inconsistent with the marked social limitations she assessed. Tr. 30, 345. Other treatment notes document Mr. Blakesley's grief over his step-father's death and attempts to secure housing, but do not document the kinds of extreme limitations she opined in May 2012. Tr. 347-55. This was a specific and legitimate reason to reject her May 2012 opinion.

The ALJ gave specific and legitimate reasons to reject Dr. Cantrell's May 2012 interrogatory opinions and did not err by failing to find Mr. Blakesley met a listing based on

REPORT AND RECOMMENDATION - 11

these opinions.

### 3. Dr. Kodner

Dr. Kodner examined Mr. Blakesley in May 2011. He diagnosed depressive disorder, NOS; posttraumatic stress disorder, chronic; panic disorder by history; and attention deficit disorder, inattentive type; and assigned a GAF score of 48-50, indicating serious symptoms or a serious impairment in social, occupational, or school functioning. DSM-IV at 34. He opined that Mr. Blakesley would have moderate to marked difficulty with simple and repetitive tasks and marked to severe difficulty with detailed and complex tasks; moderate to marked difficulty understanding and processing instructions from supervisors; marked difficulties interacting with coworkers and the public; marked to severe difficulty performing work activities consistently without significant, special, or additional instruction; marked to severe difficulty performing and maintaining regular work attendance because of his emotional concerns and days when he is too anxious and depressed to be able to work; be unable to complete a normal work day or work week without interruptions because of his psychiatric problems; and would have severe difficulties managing the usual stressors encountered in the workplace because of his untreated emotional problems. Tr. 368-73.

The ALJ gave Dr. Kodner's opinion little weight. The ALJ found that Mr. Blakesley's activities demonstrate a greater degree of functional ability than the doctor opined. Tr. 29. The activities the ALJ discusses include Mr. Blakesley's report to Dr. Zvilna that he usually rises at 9:00 a.m., is able to bathe and dress most days, and on a typical day tries "to make a reason to leave the apartment but there isn't any." Tr. 28. The ALJ fails to explain how these activities show greater functioning than Dr. Kodner opined. This was not a legitimate reason to give the opinion little weight.

The ALJ also found that Dr. Kodner was not aware of the range of Mr. Blakesley's activities, including activities that point to socialization. Tr. 29. The ALJ pointed to Mr. Blakesley's report to Dr. Zvilna that on a typical day he would "surf around the net looking for work and try to keep in contact with" the friends he has, and his participation in medieval reenactments. *Id.* The ALJ fails to explain how surfing the Internet and trying to keep in touch with friends (but not necessarily succeeding) is inconsistent with moderate to marked limitations in the ability to interact with supervisors, coworkers, and the public. Nor does the record show that Mr. Blakesley participated in medieval reenactments in a manner that was inconsistent with Dr. Kodner's opinion. This was not a legitimate reason to give the opinion little weight.

The ALJ found that Mr. Blakesley's mental status examination findings demonstrated an ability to perform at least simple tasks. Tr. 29. An ALJ may not substitute his own interpretation of the medical evidence for the opinion of a medical professional. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999). But that it what the ALJ did here, reaching his own conclusions about the significance of the mental status exam, in contradiction to the Dr. Kodner's own interpretation. This was not a legitimate reason to reject the opinion.

Because the ALJ did not provide specific and legitimate reasons, supported by substantial evidence, for giving little weight to Dr. Kodner's opinion, the ALJ erred by rejecting it.

B.     **Remand for award of benefits**

Mr. Blakesley requests remand of this case for payment of benefits for the closed period at issue in this case. Dkt. 14 at 22. The Court may remand for an award of benefits where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion, and (3) if the improperly discredited evidence

were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, No. 12-15103, __ F.3d __, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014).  Courts have some flexibility in applying this rule, and may instead remand for further proceedings where the record as a whole "creates serious doubt that a claimant is, in fact, disabled." *Id.* at *21.

The Court finds that the conditions necessary for an award of benefits are satisfied here. First, the record has been fully developed, particularly given the fact that only a closed period of time is at issue in this case.  Second, for the reasons stated above, the ALJ failed to provide legally sufficient reasons to reject Dr. Cantrell's and Dr. Kodner's May 2011 opinions.  And third, if these opinions were credited as true, the ALJ would be required to find Mr. Blakesley disabled for the closed period of time at issue here.  These doctors, a treating psychologist and an examining psychiatrist, opined that Mr. Blakesley was greatly limited and had serious functional limitations in numerous areas.  Dr. Kodner opined that Mr. Blakesley would not be able to complete a normal workday or workweek without interruptions from his psychiatric problems. And the vocational expert testified that a person who would have sporadic absences due to illness at least one day out of a normal workweek would not be able to maintain employment. Tr. 69-71.  The Court finds no reason to exercise flexibility in the credit-as-true rule, as a review of the record as a whole does not create serious doubt that Mr. Blakesley was in fact disabled for the closed period of time.  The Court therefore recommends remand for an award of benefits for the period from the alleged onset date of April 9, 2010, to the date Mr. Blakesley began working at substantial gainful activity levels, February 1, 2012.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be

REPORT AND RECOMMENDATION - 14

1  **REVERSED** and the case be **REMANDED** for further administrative proceedings for an award
2  of benefits for the closed period from April 9, 2010, to February 1, 2012.
3        A proposed order accompanies this Report and Recommendation.  Objections, if any, to
4  this Report and Recommendation must be filed and served no later than **September 12, 2014**.  If
5  no objections are filed, the matter will be ready for the Court's consideration on that date.  If
6  objections are filed, any response is due within 14 days after being served with the objections.  A
7  party filing an objection must note the matter for the Court's consideration 14 days from the date
8  the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The
9  failure to timely object may affect the right to appeal.
10       DATED this 29th day of August, 2014.

                            BRIAN A. TSUCHIDA
                            United States Magistrate Judge